IN THE DISTRICT COURT OF THE UNITED STATES

DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Angelo Ham and Thomas M. Fair, Jr., ) | |
| ) | Civil Action No.  6:13-3077-JMC-KFM |
| Plaintiffs, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Nikki Haley, Brian P. Stirling, ) | |
| and John B. Tomarchio, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the defendants' motion for summary judgment (doc. 57).  The plaintiffs, state prisoners who are proceeding *pro se*, seek relief pursuant to Title 42, United States Code, Section 1983.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the district court.

On February 5, 2015, the defendants filed a motion for summary judgment (doc. 57).  By order filed on February 6, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiffs were advised of the summary judgment procedure and the possible consequences if they failed to respond adequately.  The plaintiffs did not respond by the March 12, 2015, deadline.  As the plaintiffs are proceeding *pro se*, a second order was issued giving them through April 6, 2015, to file a response.  Plaintiff Ham filed a

response in opposition to the motion for summary judgment (doc. 69) on March 23, 2015.[1] Plaintiff Fair did not file a response in opposition.

## BACKGROUND

The plaintiffs are currently inmates with the South Carolina Department of Corrections ("SCDC") at the Lee Correctional Institution in Bishopville, South Carolina. On November 15, 2013, plaintiff Ham submitted a complaint challenging the charging of co-payments by the SCDC for medical services provided to certain prisoners (doc. 1). After the undersigned issued an order requiring plaintiff Ham to bring the case into proper form, Ham filed a motion on November 25, 2013, for relief from judgment and a motion to amend the complaint to add Thomas M. Fair, Jr., as a co-plaintiff (docs. 9, 13, 14).

On December 16, 2013, the undersigned issued a report and recommendation ("report") recommending the district court summarily dismiss the complaint without prejudice and deny plaintiff Ham's motions (doc. 17). With respect to the plaintiff's equal protection claim, the undersigned found that the complaint did not state a cognizable constitutional claim because the policy of charging inmates a co-payment for medical services has been found constitutional under the Eighth and Fourteenth Amendments. The plaintiff filed objections to the report on January 3, 2014 (doc. 20).

On September 16, 2014, the district court issued an order accepting in part and rejecting in part the report (doc. 24). The district court denied the motion for relief from

---

[1] While the response is captioned as being on behalf of both plaintiffs, only plaintiff Ham signed the response (*see* doc. 69, resp. to m.s.j. at 11). "It is well settled that a *pro se* prisoner plaintiff may not represent another prisoner's legal interests." *Pitsenbarger v. Hutcheson*, C.A. No. 7:13-cv-206, 2013 WL 2181270, at *3 n. 4 (W.D. Va. May 20, 2013) (citing *Hummer v. Dalton*, 657 F.2d 621, 625–626 (4th Cir.1981) (a prisoner cannot act as a "knight-errant" for others); *Inmates v. Owens*, 561 F.2d 560, 562–563 (4th Cir.1977) (one *pro se* inmate does not have standing to sue on behalf of another inmate)).

2

judgment and granted the motion to file an amended complaint.  With respect to plaintiff Ham's equal protection claim, the district court agreed with the plaintiff that he was not challenging the medical co-payment policy in general, but rather challenging the charging of co-payments to some inmates and not to others.  The district court found that with the facts currently in the record, there was not enough information to rule on the merits of the claim that the co-payment policy constituted disparate treatment among similarly situated persons.  The district court noted that as plaintiff Ham's claim did not involve a suspect class nor involve a "fundamental personal right," the defendants only had to establish that the classification of inmates regarding who is charged a medical co-payment and who is not is "rationally related to a legitimate state interest" (doc. 24, order at 6).  The district court further ruled that to make a determination on the merits of plaintiff Ham's claim, the defendants must articulate the state interest these policies purport to further and, until such information was in the record, summary dismissal of plaintiff Ham's claim was premature.

Pursuant to the district court's order, the plaintiffs filed an amended complaint on September 26, 2014, with plaintiff Fair listed in the caption (doc. 27, amended comp.). In the amended complaint, the plaintiffs allege that South Carolina legislation inappropriately authorizes the SCDC to charge inmates a nominal fee for any medical treatment or consultation provided at the request of the inmate except for psychological or mental health visits.  The plaintiffs also challenge an SCDC policy stating that no co-payment will be charged for certain medications, including medications used exclusively for the treatment of mental disorders.  The plaintiffs contend that these policies and legislation discriminate among similarly situated persons, namely inmates, by charging co-payments to one group – inmates with health conditions that are not psychological or mental health related – and not

3

charging co-payments to another – inmates with psychological or mental health conditions (*id.* at 3-4).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The South Carolina legislation at issue provides: "The Department of Corrections shall be authorized to charge inmates a nominal fee for any medical treatment or consultation provided at the request of or initiated by the inmate. Inmates shall not be charged for psychological or mental health visits." 2001 S.C. Acts 66, § 37.22. SCDC policy also specifies that "[n]o co-payment will be charged for certain medications. A list of these medications will be developed and maintained by the Division of Health Services and will include: medications used exclusively for the treatment of mental disorders . . . and selected medications which in SCDC are more frequently used to treat mental health disorders" (doc. 57-2, SCDC Policy HS-18.17 § 4.11).

The medical co-payment policy of SCDC implements "an inmate co-payment system for eligible medical care and consultation services initiated or requested by inmates, while at the same time ensuring that all inmates are provided the opportunity to receive necessary health care services regardless of their ability to pay" (*id.* at "Purpose"). The policy repeatedly recognizes that inmates should not be denied or refused access to health care services because of any inability to pay the medical co-payment fee (*id.* at "Purpose," "Policy Statement," §§ 2.2, 3.3).

The medical co-payment policy exempts from the fee certain health care services and treatment, including:

> 1. Initial assessments during the reception and evaluation process, classification physicals, and transfer evaluations;
>
> 2. Diagnostic tests and dressing changes;

5

> 3. Immunizations, tuberculosis (TB) testing, and other selected treatments instituted/initiated by SCDC for public health reasons;
>
> 4. Infirmary care;
>
> 5. Psychological, mental health, and social work services, to include referrals to psychiatrists;
>
> 6. Lab work and x-rays;
>
> 7. Written referrals from one qualified health care provider to anther related to the initial medical problem;
>
> 8. Any clinical visits, to include chronic visits, initiated by the SCDC to monitor the stated disease process on a routine basis;
>
> 9. Hospice care; and
>
> 10. Medical procedures as a result of an injury the inmate sustained on the job.

(*Id.* § 4).[2]

As an initial matter, it is clear that the charging of co-payments or fees to inmates by correctional institutions for medical services is constitutional and does not violate the Eighth or Fourteenth Amendments. *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012) ("the imposition of a modest fee for medical services, standing alone, does not violate the Constitution"); *Reynolds v. Wagner*, 128 F.3d 166, 174 (3rd Cir. 1997) (holding that policy charging inmates for medical care is not *per se* unconstitutional and policy "simply represents an insistence that the prisoner bear a personal expense that he or she can meet and would be required to meet in the outside world."); *see, e.g., Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 408 (9th Cir. 1985) (imposition of a

---

[2]Notably, the Federal Prisoner Health Care Copayment Act of 2000 similarly provides that the Bureau of Prisons may collect a fee for health care visits requested by a *federal* prisoner. Along with some other services, "mental health care" is excluded from the fee provision. *See* 18 U.S.C. § 4048(b)(2).

three dollar fee for each medical visit did not constitute deliberate indifference); *Clayton v. Ozmint*, C.A. No. 2:10-cv-190-RBH, 2011 WL 380149, at *4 (D.S.C. Feb. 2, 2011); *Cabbagestalk v. Richstad*, C.A. No. 3:09-1834, 2009 WL 4040479, at *9 (D.S.C. Nov. 19, 2009) ("The charging of co-payments or fees for medical services is constitutional. Prisons and jails are allowed to impose co-payments for medical services if they actually provide medical care to prisoner.") (citation omitted).

The plaintiffs challenge as violating the Equal Protection Clause that portion of the policy that exempts the care and treatment of psychological or mental health conditions and medications relating to the treatment of mental health disorders from the co-payment fee while requiring a co-payment fee for other non-psychological medical treatment and medications. Under the Equal Protection Clause of the Fourteenth Amendment, no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "Unless a classification trammels fundamental personal rights[3] or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976).

---

[3]In response in opposition to the motion for summary judgment, plaintiff Ham argues that a "fundamental personal right" in "not being charged a co-payment" is at stake, and, therefore, strict scrutiny of the SCDC policy is required (doc. 69, resp. to m.s.j. at 6-7). However, as discussed above, the charging of co-payments or fees to inmates by correctional institutions for medical services is constitutional. *See* doc. 24, order ("As Plaintiff's claim does not involve a suspect class, nor involve a 'fundamental personal right,' Defendants must only show the classification of prisoners regarding who is charged a medical co-payment and who is not is 'rationally related to a legitimate state interest.'").

7

Prisoners are not a suspect class for the purpose of equal protection analysis. *Wilkins v. Gaddy*, 734 F.3d 344, 348 (4th Cir. 2013) (citation omitted); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) (prison regulation "is valid if it is reasonably related to legitimate penological interests."). The "general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne*, 473 U.S. at 440; *see also McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802, 809 (1969) ("Legislatures are presumed to have acted constitutionally even if source materials normally resorted to for ascertaining their grounds for action are otherwise silent . . . ."). When social or economic legislation is at issue, the Equal Protection Clause grants the States wide latitude, and the Constitution presumes that even "improvident decisions will eventually be rectified by the democratic processes." *City of Cleburne*, 473 U.S. at 440. The rational basis review is the lowest level of equal protection scrutiny. *Riddle v. Mondragon*, 83 F.3d 1197, 1207 (10th Cir. 1996). Under this rational basis test, "a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *Id*. (citing *McGowan v. Maryland*, 366 U.S. 420, 426 (1961)).

   The defendants argue that the rational basis standard is easily satisfied here as the SCDC has a legitimate state interest in exempting from the medical co-payment fee the treatment, care, and medications for psychological and mental health disorders while continuing to charge the co-payment fee for other medical treatment, care, and medications. Specifically, the defendants argue that the SCDC has a great incentive to encourage inmates with mental health or psychological conditions to seek, obtain, and continue with treatment for those conditions for at least two reasons (doc. 57-1, m.s.j. at 10-11). The undersigned agrees.

First, the Eighth Amendment of the Constitution imposes certain duties on prison officials, who must provide humane conditions of confinement. "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citations omitted). Among the duties of prison officials is the duty "to protect prisoners from violence at the hands of other prisoners." *Id*. at 833 (internal citations omitted). Prison officials also have a constitutional duty "to take reasonable measures to protect a prisoner from self-destruction when the jailer knows that the prisoner has suicidal tendencies." *Gordon v. Kidd*, 971 F.2d 1087, 1097 (4th Cir. 1992). As noted by the defendants, while there is some debate in the psychiatric community as to the degree to which a diagnosis of mental illness is related to an increased risk of violent behavior, research has shown that individuals suffering from a mental disorder, if properly treated, may have no greater propensity to commit violent acts as compared to non-mentally ill individuals. *See Walton v. Spherion Staffing LLC*, C.A. No. 13-6896, 2015 WL 171805 at *4 n.16 (E.D. Pa. Jan. 13, 2015) (collecting research). With research suggesting that proper treatment can foil violence by the mentally ill, the SCDC has not only an incentive, but a duty to ensure that those with mental health and psychological concerns receive treatment to protect themselves and other inmates from potential violence. Waiving the medical co-payment fee for mental health or psychological care furthers the interest of the SCDC in assuring that inmates in need of such treatment receive care.

Second, it is widely recognized that rehabilitation is one of the primary purposes and goals of incarceration. *Bowring v. Godwin*, 551 F.2d 44, 48 n.2 (4th Cir. 1977). The defendants argue that inmates who suffer from mental health and psychological conditions may have offended in the first instance because an untreated condition.

Treatment for these conditions while incarcerated serves the goal of rehabilitation of the offender and preparing the offender for reintegration into society. The waiver of the medical co-payment fee for such mental health or psychological treatment advances the rehabilitation goals of the SCDC.

The undersigned finds that the defendants have established that the policies and legislation at issue are "rationally related to a legitimate state interest." Accordingly, summary judgment should be granted to the defendants.

## CONCLUSION AND RECOMMENDATION

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' motion for summary judgment (doc. 57) be granted  The attention of the parties is directed to the notice on the next page.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

July 23, 2015
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

A rThe parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).